IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| FRANK SIMS, et. al., | § | |
| | § | |
|    Plaintiffs, | § | |
| | § | |
| v. | § | EP-10-CV-109-KC |
| | § | |
| HOUSING AUTHORITY OF THE | § | |
| CITY OF EL PASO, | § | |
| | § | |
|    Defendant. | § | |

## ORDER

On this day, the Court considered "Defendant's Motion for Partial Summary Judgment as to Claims for 'Stand-By' On Call Time" ("On-Call Motion"), ECF No. 47, and "Defendant's Motion for Partial Summary Judgment Due to Executed Settlement Agreements" ("Release Motion"), ECF No. 48. For the reasons set forth below, Defendant's On-Call Motion is **GRANTED** and Defendant's Release Motion is **DENIED**.

## I. BACKGROUND

Because Plaintiffs did not respond to Defendant's motions, all of the following facts are undisputed. *See* Fed. R. Civ. P. 56(e).

Defendant operates housing properties in the El Paso, Texas, area. Def.'s Proposed Undisputed Facts ("Facts") ¶¶ 3-4, ECF No. 47-1. Plaintiffs are maintenance foremen and technicians currently or formerly in the employ of Defendant. *See id.* Two of the Plaintiffs filed the instant suit on March 23, 2010, alleging Defendant violated the Fair Labor Standards Act ("FLSA") by failing to pay them appropriate overtime wages for weeks in which they worked more than forty hours. Compl. ¶ 16, ECF No. 1. The Court authorized this case to proceed as a

collective action, after which the other Plaintiffs joined. *See* Order, ECF No. 15.

  A. **Defendant's On-Call System**

Seven of the Plaintiffs, as part of their claims for unpaid overtime, assert that they should have been paid for time spent in standby or on-call status, meaning time they were required to be available to respond to calls for after-hours maintenance needs from Defendant's tenants. Facts ¶ 6. These Plaintiffs are Frank Sims ("Sims"), Frank Pacheco, Manuel Jesus Aguilar, Raul Apodaca ("Apodaca"), Christian Balderrama, Gilbert Cubillos, and Ernesto Ruiz (collectively, "Standby Plaintiffs"). The Standby Plaintiffs all worked as maintenance foremen.[1] On-Call Mot. 1.

Under its on-call system, each week Defendant assigned two hourly-paid maintenance employees, an electrician, a maintenance foreman, and one or two members of management to be on call. Facts ¶ 7-8. For the front-line hourly employees, being on call meant being available from 5:00 p.m. to 8:00 a.m., Monday through Friday, and all day on Saturdays, Sundays, and holidays, to: (1) respond to telephone calls from residents about maintenance problems and/or (2) provide actual maintenance duties on-site at a resident's unit in case of an emergency problem that could not wait to be addressed during regular working hours. *Id.* ¶ 7. On-call employees were given cell phones to make and receive calls relating to after hours maintenance issues. *See id.* ¶¶ 14, 53. The maintenance foreman was on call at the same time as the front-line employees to serve as a back up in the event there was a question or issue that could not be handled by one of those employees. *Id.* ¶ 10.

---

[1]  The foreman position was later re-titled as superintendent. On-Call Mot. 4 n.4. For simplicity the Court here refers to the position by its original name.

The maintenance foreman received approximately three to four telephone calls during the week and a higher number of calls on the weekends. *Id.* ¶ 18. Generally, maintenance foremen could handle over the phone the calls they received. *Id.* ¶¶ 19-20. Thus, it was rare for a foreman to have to respond to a call in person during the week, and it happened on average one or two times per weekend. *Id.* ¶¶ 24-25. Maintenance foremen and other employees were fully paid for the time they spent actually responding to calls, whether it was by telephone or in person. *Id.* ¶¶ 21, 23.

The only specific restrictions on maintenance foreman while on call were that they were not permitted to drink alcohol and they could not leave the general area of El Paso where the housing units they were responsible for were located. *Id.* ¶ 27. The foremen were free to remain at home, where they could eat, watch TV, use the computer, talk on the phone, take care of their home, play with children, or engage in any other personal leisure activity. *Id.* ¶ 26. Additionally, they could take short trips to stores or restaurants, so long as they were available to promptly perform their duties. *Id.* To minimize the burden on the foremen by reducing travel time, where possible, foremen were assigned responsibility for housing units located in the same general area of town where they lived. *Id.* ¶ 28. Maintenance foremen could change their week of on-call assignment by submitting a request to the supervisor of the on-call system. Additionally, if a foreman had a schedule conflict or personal matter to attend to, he could request and receive a substitution for a single night. *Id.* ¶ 29.

**B.    Release Agreements**

Defendant employed Sims in various maintenance positions, including stints in supervisory roles, from November 1987 until August 2009. Def.'s Proposed Undisputed Facts

("Supplemental Facts") ¶ 2, ECF No. 48-1. Defendant employed Apodaca as a maintenance employee from April 2000 to August 2010. *Id.* ¶ 9. In August 2009, Defendant offered Sims a choice between termination and resignation with severance benefits. *Id.* ¶ 3. Defendant made the same offer to Apodaca in August 2010. *Id.* ¶¶ 10-11.

One of the conditions of the severance benefits package offered to both men, which consisted of payment for their accrued paid time off and one week of severance pay, was that they sign release agreements waiving any employment-related claims they might have against Defendant. *Id.* ¶¶ 8, 14; *see* Aff. of Sajmon Luckose Exs. 1-2 ("Agreements") ¶¶ 6-7, ECF No. 48-1. The Agreements specifically provided that in exchange for the benefits of the severance package, Sims and Apodaca agreed to waive any claims they might have under the FLSA and any claims for unpaid wages or benefits. *Id.*

## II. DISCUSSION

### A. Standard

Summary judgment is required "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quoting *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (per curiam)). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 189 (5th

Cir. 1996).

"[The] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996). To show the existence of a genuine dispute, the nonmoving party must support its position with citations to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials[,]" or show "that the materials cited by the movant do not establish the absence . . . of a genuine dispute, or that [the moving party] cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c). The court resolves factual controversies in favor of the nonmoving party; however, factual controversies require more than "conclusory allegations," "unsubstantiated assertions," or "a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Further, when reviewing the evidence, the court must draw all reasonable inferences in favor of the nonmoving party, and may not make credibility determinations or weigh evidence. *Man Roland, Inc. v. Kreitz Motor Express, Inc.*, 438 F.3d 476, 478-79 (5th Cir. 2006) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). Thus, the ultimate inquiry in a summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

**B.     On-Call Motion**

Defendant's On-Call Motion requests summary judgment that the time spent by the

Standby Plaintiffs in a standby or on-call status as maintenance foremen, other than the time during which they actually had to respond to calls by telephone or in person, was not compensable time under the FLSA. On-Call Mot. 4-5. Plaintiffs did not respond to the On-Call Motion.

Section 7(a)(1) of the FLSA forbids employers from employing an employee for more than forty hours in a week unless that employee is compensated for his hours worked above forty hours at a rate "not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Whether an employee is "employed" during the time he spends on call, and thus whether such time is compensable time that counts towards the number of hours worked in a workweek for overtime purposes, depends fundamentally upon "'whether the employee can use the on-call time effectively for his own purposes.'" *Paniagua v. City of Galveston, Tex.*, 995 F.2d 1310, 1316-17 (5th Cir. 1993) (quoting *Halferty v. Pulse Drug Co.*, 864 F.2d 1185, 1189 (5th Cir. 1989)) (alteration and ellipsis omitted). But, this standard "does not imply that the employee must have substantially the same flexibility or freedom as he would if not on call"; in fact, "'employees who have received compensation for idle time generally have had almost no freedom at all.'" *Bright v. Houston Nw. Med. Ctr. Survivor, Inc.*, 934 F.2d 671, 676-77 (5th Cir. 1991) (en banc) (quoting *Halferty*, 846 F.2d at 1190) (alteration omitted). Though the Supreme Court has stated that whether time is compensable "is a question of fact," *Skidmore v. Swift & Co.*, 323 U.S. 134, 138 (1944), the Fifth Circuit has held that where the relevant basic facts of what activities an employee may engage in while on call are undisputed, the question of whether an employee was able to use the time for his own purposes may be resolved by courts as a matter of law on summary judgment. *Bright*, 934 F.2d at 675.

In the Fifth Circuit, relevant facts for courts to consider when determining whether an employee is free to use his time for his own purposes are: (1) whether the employee is restricted to some fixed place designated by his employer; or may move between various locations such as his own home, friends' homes, churches, restaurants, or gyms; (2) what activities the employee may engage in, such as eating, sleeping, drinking alcohol, exercising, watching television, doing laundry, or playing cards or other games; (3) the response time or maximum distance radius from the place of business imposed on the employee; (4) whether employees can make arrangements to trade on-call shifts among themselves or request their employer to reassign an on-call shift to another employee; and (5) the frequency with which employees must respond to a call. *Bright*, 934 F.2d at 677-78; *Paniagua*, 995 F.2d at 1317; *Brock v. El Paso Natural Gas Co.*, 826 F.2d 369, 373-74 (5th Cir. 1987).

Here, based on the undisputed facts, the Court concludes that the Standby Plaintiffs were able to use their on-call time for their own purposes. Regarding the first factor, location requirements, Standby Plaintiffs were not restricted to one location, but instead given cell phones so they could be reached wherever they might be. Thus, they could not only rest at home, but also go out to social events, restaurants, and the like. The Fifth Circuit has held that employees may use their on-call time for their own purposes even when they are restricted to their homes, *Brock*, 826 F.2d at 373, to a river barge, *C.M. Rousseau v. Teledyne Movible Offshore, Inc.*, 805 F.2d 1245, 1248 (5th Cir. 1986), or to their employer's place of business during a strike. *Allen v. Atl. Richfield Co.*, 724 F.2d 1131, 1135 (5th Cir. 1984). In comparison with these cases, the Defendant afforded the Standby Plaintiffs markedly more freedom. So, the Court concludes this factor weighs against finding the on-call time to be compensable.

Regarding the second factor, activity restrictions, the only limit on Standby Plaintiffs' actions were that they could not drink alcohol. They were free to eat, watch TV, talk on the phone, take care of their home and children, and take trips to stores or restaurants. *See Brock*, 826 F.2d at 370 (employees free to "eat, sleep, entertain guests, watch television, or engage in any other personal recreational activity, alone or with his family" could use their time for their own purposes); *Paniagua*, 995 F.2d at 1317 (employee free "to attend movies, go to dinner, and otherwise travel within a thirty-mile radius" was not working during his on-call time). Given the range of permissible activities, the sole restriction of not drinking alcohol is not equivalent to having "'almost no freedom at all.'" *Bright*, 934 F.2d at 676 (quoting *Halferty*, 846 F.2d at 1190). Moreover, the Fifth Circuit held in *Bright* that a rule against drinking excessive alcohol consumption was not so restrictive to as make on-call time into work time. *Id.* at 678. Thus, this factor weighs against finding the on-call time to be compensable.

Regarding the third factor, minimum response time or maximum distance radius, Standby Plaintiffs were merely required to respond to calls promptly and to stay in the general area where the units they were responsible for maintaining were located. Given that they were issued cell phones, the response time appears to have imposed virtually no restriction on the Standby Plaintiffs' time whatsoever. The phrase "general area" is of marginally greater concern because of its vagueness. But, the Fifth Circuit has held that an ability to go "virtually anywhere" within a twenty or thirty minute radius of the employer's place of business strongly indicated that an employee was free to use his time for his own purposes. *Bright*, 934 F.2d at 678. A requirement to stay in the "general area" of certain housing units does not appear to impose much more restraint than the provision the Fifth Circuit upheld in *Bright*. Therefore, the Court concludes

8

this factor weighs against finding the on-call time to be compensable.

Regarding the fourth factor, ability to trade on-call shifts, Standby Plaintiffs could switch a day or a week of on-call time if needed. Like the Fifth Circuit in *Brock*, the Court finds that this system afforded Standby Plaintiffs "great flexibility in scheduling on-call time" by allowing them to "relieve themselves of the on-call obligation whenever they choose to do so." *See Brock*, 826 F.2d at 373. This factor weighs against finding the on-call time to be compensable.

Finally, regarding the fifth factor, the frequency of calls, the Standby Plaintiffs do not appear to have been plagued by calls requiring responses. On any given weeknight, Standby Plaintiffs would receive approximately one call, and on each day of the weekend, approximately two calls. *See* Facts ¶¶ 18, 25. This volume is not so heavy as to have prevented them from using their time for their own purposes. Therefore, this factor weighs against finding the on-call time to be compensable.

In sum, all five of the factors prior courts have found relevant favor Defendant here. Accordingly, the Court concludes the Standby Plaintiffs were able to use their time effectively for their own purposes. *See Paniagua*, 995 F.2d at 1316-17. The Court grants Defendant summary judgment on the Standby Plaintiffs' claims to the extent that their claims are based upon on-call time.

    **C.**    **Release Motion**

Defendant's Release Motion requests summary judgment on the claims asserted by two Plaintiffs, Frank Sims and Raul Apodaca, on the grounds that both employees signed release agreements before leaving employment with Defendant. Defendant argues that when these Plaintiffs signed the Agreements, they entered into enforceable contracts in which they agreed to

waive any employment-related claims they might have and not to file any suit asserting any such claims, and that the Agreements defeat their claims here. Release Mot. 2-5. Neither Sims nor Apodaca responded to the Release Motion.

Employees' rights to minimum wage and overtime under the FLSA may not be waived or abridged by contract. *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981) (citing, inter alia, *Brooklyn Sav. v. O'Neil*, 324 U.S. 697, 707 (1945)); *Allen*, 724 F.2d at 1135 ("an employee's right to a minimum wage per hour or overtime pay for hours over forty hours a week is not subject to waiver by the employee"). This is because FLSA rights are both private and public; one employee's waiver of his right to minimum wage or overtime would necessarily decrease other employees' abilities to insist on receiving those rights. *Brooklyn Sav.*, 324 U.S. at 704. Other employees would be affected because of employees' inherently weaker bargaining power relative to employers. *Id.* at 708. Also, once one employer began obtaining such waivers from their employees, other employers would follow suit because they would be at a competitive disadvantage if they did not. *See id.* at 710.

From this universally acknowledged premise, courts have split over whether settlement of FLSA claims are to be treated as equivalent to waivers, or whether FLSA claims may sometimes be settled privately without the involvement of the Department of Labor or the courts. One division of this Court has interpreted 29 U.S.C. § 253, a provision enacted subsequent to the Supreme Court's enunciation of the anti-waiver doctrine, as allowing for private settlement of disputes over wage claims. *See Martinez v. Bohls Bearing Equip. Co.*, 361 F. Supp. 2d 608, 631 (W.D. Tex. 2005) ("parties may reach private compromises as to FLSA claims where there is a bona fide dispute as to the amount of hours worked or compensation due"). The other position,

which appears to have the greater weight of authority on its side,[2] interprets § 253 as only allowing for settlement of certain disputes that arose prior to 1947, and holds that under the FLSA as applicable today settlement of claims requires DOL or court supervision to prevent employees from being pressured to waive the FLSA's protections. *See, e.g.*, *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982) ("other than a section 216(c) payment supervised by the Department of Labor, there is only one context in which compromises of FLSA back wage or liquidated damage claims may be allowed: a stipulated judgment entered by a court"); *see also Beard v. Dist. of Columbia Hous. Auth.*, 584 F. Supp. 2d 139, 143 (D.D.C. 2008) (finding in the case law "a long-held view" that private settlements under the FLSA are impermissible) (citations omitted).

But even *Martinez*, which found private settlement of claims permissible, only allowed for such settlements where there was a bona fide dispute between the parties. *Martinez*, 361 F. Supp. 2d at 361-62 (stating as the rule, "parties may reach private compromises as to FLSA claims where there is a bona fide dispute as to the amount of hours worked or compensation due," and finding a bona fide dispute after examining the facts of the case). Like the Supreme

---

[2] The Court notes that other courts to have examined the issue subsequent to *Martinez* have called into doubt that decision's conclusion. *See Yue Zhou v. Wang's Rest.*, No. C 05-0279 PVT, 2007 WL 172308, at *1 n.2 (N.D. Cal. Jan. 17, 2007) (noting that the *Martinez* decision relied on Age Discrimination in Employment Act ("ADEA") cases, and observing that the decision "ignored the clear expression of congressional intent implicit in congress' decision to amend the ADEA to allow for the release of ADEA claims when certain strict requirements are met, without any change to the non-waivability of FLSA claims"); *Lewis v. Giordano's Enters., Inc.*, 921 N.E.2d 740, 748-49 (Ill. App. Ct. 2009) (rejecting *Martinez* because the decision "ignores prior federal cases . . . holding that private settlements of wage claims are not permitted under the FLSA and, instead, relies on a case permitting private settlements under a different statute," and because the *Martinez* court "relied almost exclusively on dissenting opinions to support its argument that there is a trend among federal courts toward allowing private settlements").

Court in *Brooklyn Savings*, 324 U.S. at 703-04, 714, the *Martinez* court appears to have viewed a bona fide dispute as the distinguishing characteristic between an invalid waiver and a settlement agreement, which *Martinez* found to be valid. *Martinez*, 361 F. Supp. 2d at 361-62. The requirement of an adversarial posture between parties to a settlement agreement operates as a guarantee that employers cannot profit by coercing employees into waiving their rights, and then dressing that invalid waiver of the FLSA's protections as a valid settlement of a legal claim. *See id.*; *see also Brooklyn Sav.*, 324 U.S. at 708 (discussing unequal bargaining power as a factor in why waivers in the absence of a bona fide dispute are invalid).

Here, Defendant appears to concede that a bona fide dispute is a requirement for the Agreements to be valid. *See* Release Mot. 4. But apart from Defendant's bare assertion in its argument, *see id.*, Defendant has not submitted any evidence from which the Court can conclude that a bona fide dispute existed when Sims and Apodaca signed the Agreements. There is no indication that Sims or Apodaca had any notion that they might be due wages under the FLSA when they left Defendant's employ. Defendant has not shown that Sims and Apodaca presented it with an FLSA claim, that it objected in any fashion to such a claim, or that there was a discussion of the number of overtime hours they had worked or of the amount of pay they were due. *See Hohnke v. United States*, 69 Fed. Cl. 170, 176 (Fed. Cl. 2005) (finding such factors to indicate the absence of a bona fide dispute). As in *Brooklyn Savings*, "there was no discussion or dispute prior to [their] acceptance of the check[s] given [them] . . . either as to the existence of liability under the [FLSA] or as to the amount of such liability." 324 U.S. at 704 n.12. That Sims and Apodaca eventually brought the present suit is not necessarily an indication that there was a bona fide dispute at the time they signed the Agreements; Plaintiffs might have consulted

with an attorney subsequent to their separation and only then discovered the existence of their claims. *See Hohnke*, 69 Fed. Cl. at 176 (finding no bona fide dispute where a plaintiff was represented by an attorney in negotiations over an unrelated employment dispute, and that attorney specifically negotiated a provision relating to waiver of FLSA claims in the settlement of that dispute, but later discovered potential FLSA claims).

Based on the record at this time, the Court concludes that there was no bona fide dispute at the time Sims and Apodaca signed the Agreements. Consequently, the Agreements are mere prospective waivers of FLSA rights, which are forbidden on public policy grounds. *See Barrentine*, 450 U.S. at 740. Accordingly, Defendant's Release Motion is denied.

## III. CONCLUSION

For the reasons set forth above, Defendant's On-Call Motion, ECF No. 47, is **GRANTED** and Release Motion, ECF No. 48, is **DENIED**.

**SO ORDERED.**

**SIGNED** on this 1st day of September, 2011.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE